UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN A. HAWKINSON<br>   *Plaintiff*,<br> v.<br>EXECUTIVE OFFICE FOR IMMIGRATION REVIEW<br>   *Defendant.* | Civil Action No.<br>20-cv-12273-MPK<br>**ORAL ARGUMENT REQUESTED** |

### PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant performed an inadequate FOIA search, and has not seriously attempted to explain or justify its choices. This Court should deny summary judgment to Defendant and order Defendant to conduct an adequate search.

 This case isn't complicated. Plaintiff read a Board of Immigration Appeals (BIA) decision and was surprised by a phrase within. Plaintiff filed a FOIA seeking recent decisions with the same phrase and got back two, not including the one he already possessed. Defendant has made no attempt to explain the omission of the first decision, and has searched one of its two databases that do not even purport to comprehensively include all recent BIA decisions. Defendant's search is plainly inadequate, both in practice and as a matter of law.

 Defendant failed to search its original electronic repository of BIA decisions, the Ba's "data library," which provides native electronic versions that are searchable without the errors introduced by printing, scanning, and subsequent error-prone Optical Character Recognition (OCR).

 Defendant has had three chances to both investigate its failure and to explain itself, and it has declined to do so all three times. This Court should not countenance such behavior that contravenes the purpose of the FOIA statute as well as common sense.

It shouldn't have been necessary to administratively appeal what could have been resolved in conversation with the FOIA attorney assigned to processing the request. It shouldn't have been necessary to litigate what could have been resolved on administrative appeal. And it shouldn't be necessary to raise in summary judgment opposition what should have been explained by Defendant in their summary judgment briefing, yet on which it was silent.

Defendant's FOIA search of BIA decisions is obviously inadequate, in both the plain English sense of the word as well as under the legal standard. It has failed to return the BIA decision previously in Plaintiff's possession, attached herein as Exhibit 1A[1].

**If it has failed to find one in three documents, how many others has it failed to find?**

---

[1] Plaintiff has conferred with attorney who filed the document in federal court, counsel for Amaury Vladimir Reyes-Batista, and confirmed that no redaction is required prior to filing this document publicly and unrestricted in CM/ECF. Although the Government typically redacts Alien Registration Numbers (A-Numbers), they are not secret and are not akin to Social Security Numbers and they are not sufficient personally identifying information to support identity theft. They are not numbers whose redaction is required under Rule 5.2.

# II. Table of Contents

(I.)   Introduction and background ........................................... 1

II.   Table of Contents .................................................... 3

III.  Table of Authorities .................................................. 4

IV.   Plaintiff's response to Defendant's LR56.1 statement of the material facts   6

V.    Plaintiff's LR56.1 concise statement of undisputed material fact   7

VI.   Argument ........................................................... 10

    A.   Defendant didn't search the "data library" .................. 10

    B.   Defendant's search affidavit is inadequate .................. 11

    C.   Inadequacy of followup ..................................... 16

VII.  Conclusion .......................................................... 18

       Request for oral argument ..................................... 18

# III.  Table of Authorities

CASES                                                                                                                                Page

*Gilberto **Pereira Brito** et al. v. William **Barr** et al.* 415 F. Supp. 3d 258 (D. Mass
   No. 19-cv-11314-PBS, ECF No. 88) (*appeal pending*) . . . . . . . . . . . . . . . . . 7

*Campbell v. SSA*, 446 Fed. Appx. 477 (3rd Cir. 2011)   . . . . . . . . . . . . . . . . .  16

*Church of Scientology of Cal. v. I.R.S.*,
   792 F.2d 146 (D.C. Cir. 1986) (Scalia, J.) . . . . . . . . . . . . . . . . . . . . . .  14

*Maynard v. CIA*, 986 F.2d 547 (1st Cir. 1993)  . . . . . . . . . . . . . . . . . . . .  14

*Miller v. United States Dept. of State*, 779 F.2d 1378 (8th Cir. 1985) . . . . . . . . . . .  14

*Moradi v. Morgan*, 2021 U.S. Dist. LEXIS 54896  (D. Mass, March 22,
   2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Nation Magazine v. United States Customs Serv.*,
   71 F.3d 885 (D.C. Cir. 1995)   . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990)   . . . . . . . . . . . . . .  11

*Oleskey v. United States DOD*, 658 F. Supp. 2d 288 (D. Mass 2009)  . . . . . . . . . . 11

*Stalcup v. CIA*, 768 F.3d 65 (1st Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . 15

*Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365 (D.C. Cir. 1980) . . . . . . . . . . . . . .  15

*Weisberg v. United States Dept. of Justice*, 705 F.2d 1344 (D.C. Cir. 1983) . . . . . . . .  14

CONSTITUTIONAL PROVISIONS, STATUTES, REGULATIONS, AND RULES

   28 CFR

      § 16.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   Federal Rules of Civil Procedure

      Rule 5.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


OTHER AUTHORITIES

   Declaration of John A. Hawkinson . . . . . . . . . . . . . . . . . . 7, 8, 9, 11, 12, 13, 16

   Declaration of Matthew Hoppock . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 13

   Declaration of Shelley M. O'Hara . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   Defendant's LR56.1 Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . 6

# IV. Plaintiff's response to Defendant's LR56.1 statement of the material facts

Pursuant to Local Rule 56.1, plaintiff offers his concise statement of material facts as to which it is contended there exists a genuine issue to be tried, in response to Defendant's LR56.1 Statement of Facts (ECF No. 24-1 at I., pp. 2–10).

Plaintiff observes that Defendant's statement is labeled neither "concise" nor "material" and suggests items 2, 3, 5, 6, 7, 9, 12, are neither concise nor material to the case.

Plaintiff raises no dispute as to paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, and 19.

As to paragraph 14, Plaintiff disputes that that "acknowledging that such record existed would implicitly acknowledge the existence of the alien in the agency's system of records causing an unwarranted invasion of personal privacy."

With respect to paragraph 17, Plaintiff notes that the screenshots documenting the search of Attorney Shelley M. O'Hara (EOIR's declarant), designated as Exhibit C (ECF No. 24-4), were functionally illegible.  Plaintiff obtained high-quality versions from Defendant's counsel, repaginated them to a single image per page, and has attached them hereto as Exhibit 1C.

As to paragraph 18's contention that "Plaintiff did not provide proper verification of identity for the alien identified in his correspondence," Plaintiff disputes that any such authentication is necessary for Defendant to resolve its defective search.

## V. Plaintiff's LR56.1 concise statement of undisputed material fact

1. On or around October 20, 2020, Plaintiff reviewed the habeas petition of Amaury Vladimir Reyes-Batista, No. 20-cv-11787-PBS in this Court. Declaration of John A. Hawkinson at ¶3, attached hereto as Exhibit 1.

2. Attached to that petition at ECF No. 1-12 was the BIA's July 13, 2020 decision in Reyes-Batista's immigration case. *Id* at ¶¶4, 6, and 7. It is attached hereto as Exhibit 1A.

3. Plaintiff was surprised to see the decision claim that "An Immigration Judge may consider any or all relevant factors, but is not required . . .to even consider[] alternatives to detention. . ." as this contravenes then-Chief Judge Saris's decision in *Gilberto* **Pereira Brito** *et al. v. William* **Barr** *et al.* 415 F. Supp. 3d 258 (D. Mass No. 19-cv-11314-PBS, ECF No. 88) (*appeal pending*). Hawkinson Declaration at ¶5.

4. On Oct. 20, 2020, Plaintiff filed a FOIA request with Defendant seeking BIA decisions covering Boston and Hartford since Dec. 2019 — the decisions within the scope of *Pereira Brito* — with that same phrase. Declaration of John A. Hawkinson at ¶8.

5. After close of business on Nov. 16, 2020, Defendant responded to the FOIA with two BIA decisions located in its search. Attached hereto as Exhibit 1B. *Id* at ¶9

6. Late that evening, Plaintiff responded noting the absence of Reyes-Batista's BIA decision, and requesting the agency "ascertain whether any other cases were omitted for the same reason." *Id*¶12

7. On Nov. 17, Defendant responded directing Plaintiff to "please follow the procedures outlined in our November 16, 2020 final response," which stated, *inter alia*,

7

"You may contact the FOIA Officer or the EOIR FOIA Public Liaison by e-mail at EOIR.FOIARequests@USDOJ.GOV or by telephone number (703) 605-1297 for any further assistance and to discuss any aspect of your request." *Id* at ¶13.

8. The same day, Plaintiff redirected his request to explain the omission to the EOIR.FOIARequests@USDOJ.GOV address, and inquired whether he should file an administrative appeal. *Id* at ¶14.

9. Receiving no response, Plaintiff filed an administrative appeal with DOJ's Office of Information Policy (OIP), the DOJ component designated by regulation to receive administrative FOIA appeals pursuant to 28 CFR § 16.8. Hawkinson Declaration at ¶15.

10. On December 15, 2020, OIP affirmed EOIR's determination. *Id* at ¶16.

11. On December 17, 2020, in an effort to avoid this litigation, Plaintiff discussed the appeal by telephone with Daniel Castellano, the Acting Associate Chief of the Administrative Appeals Staff at OIP, who supervised the appeal. *Id* at ¶17.

12. Atty. Castellano said, "We went back to them — not myself, I was the supervisor — our line attorney in our office went back and said, 'Well, why — do you have any explanation for why this decision that the requester pointed to on appeal was not caught up in the search?' and, y'know, they were not able to really explain why this particular decision was not caught in the search." *Id* at ¶19.

13. Atty. Castellano further added, "but they did confirm that there was nowhere else for them to search." *Id* at ¶20.

14. Atty. Castellano conceded generally the inadequacy of Defendant's records systems, saying, "But that happens. Sometimes there are agency records system that are not perfect and databases are not — are inputted imperfectly sometimes and that does happen." *Id* at ¶21.

15. Atty. Castellano speculated that poor Optical Character Recognition was a plausible factor in search problems: "I don't think there's any reason to suspect that there are, like, other decisions that were not caught in the search, but, it could have been, I guess. These are PDFs that are searchable, right, maybe it has something to do with the OCR of those specific words, or something." *Id* at ¶22.

16. Plaintiff pressed Atty. Castellano to investigate the missing document, and Atty. Castellano agreed to do so, saying, "I could reach back and see if I could get a little bit more of an explanation—if they could find this other opinion." *Id* at ¶23.

17. On Dec. 22, 2020, Plaintiff and Atty. Castellano conferred again by telephone. "I wasn't able to get any further information from EOIR," Atty. Castellano said. *Id* at ¶¶24–26.

18. Plaintiff filed this litigation on Dec. 23, 2020. *Id* at ¶28.

19. Plaintiff filed a second FOIA request with similar parameters, this time seeking documents with the phrase "alternative conditions," rather than "alternatives to detention." It returned a single document previously produced. *Id* at ¶¶30,31.

20. In addition to the "BIA Decisions Portal" and "BIA eDecisions" databases, the BIA also maintains decisions in original electronic form (Microsoft Word .docx) in a series of "network folders" that form its "data library." Declaration of Matthew Hoppock at ¶8.

21. It is "well known that even the best of optical character recognition (OCR) scanning processes introduce a certain rate of random error into document texts, potentially transforming would-be keywords into something else." *Id* at ¶7.

22. It is general knowledge that a folder of Microsoft Word files is full-text searchable. Hawkinson Declaration at ¶33.

23. The files in the BIA data library are full-text searchable. *See* Exhibit 2B to the Hoppock Declaration at II(j), p. 5 of 8: "Also, do not use the file extension '.docm' since this extension will prevent the contents of the file to be searched" (admonishing agency staff to ensure their Word documents are not designated with a file extension that would defeat the otherwise-available full-text searching[2]).

24. The BIA "data library" is "a more complete and more accurate place to search for BIA decisions." Hoppock Declaration at ¶10.

# VI.  Argument

Defendant failed to search its native primary-source collection of electronic BIA decisions (its so-called "data library"), choosing to omit mention of that source from its briefing entirely.

Defendant fails to allege that its "BIA Decisions Portal" is complete, nor does it put forth any information about its creation, comprehensiveness, or quality. Without more, Defendant's affidavit is inadequate and its summary judgment motion must fail.

Defendant failed to seriously address the missing decision at the agency level, at the administrative appeal level, and has now failed to do so in summary judgment briefing.

## A.  Defendant didn't search the "data library"

Defendant does not produce BIA decisions by quill-and-inkwell-and-sand, nor by typewriter, but rather by word processor. It saves those decisions in a "data library" that is

---

[2] The ".docm" extension represents a "macro-enabled" Microsoft Word document that can contain Visual Basic and other programs and scripts, and in some circumstances may not be searched with some tools that handle normal ".docx" files.

"voluminous and growing." Exhibit 2B to the Hoppock Declaration at p. 3 of 8.

Defendant's data library contains native Microsoft Word .docx files. *Id* at II(j), p. 5 of 8.

Defendant's data library is a primary source free from the rampant errors introduced by printing and scanning. Defendant failed to even acknowledge the library's existence, much less explain Defendant's failure to search it.

Consequently, Defendant's search was inadequate.

"In a summary judgment context, the burden rests with the agency subject to a FOIA request to establish that it has 'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Oleskey v. United States DOD*, 658 F. Supp. 2d 288, 294 (D. Mass 2009) quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68,287 (D.C. Cir. 1990)

Indeed, indicating Defendant's ignorance about its own systems, it claimed "there was nowhere else they could search." Hawkinson Declaration at ¶20.

## B.  Defendant's search affidavit is inadequate

It is apparent that Defendant's two referenced databases are unreliable derivative secondary sources, they are not the ground truth, they are not the authoritative reference for the information that Plaintiff sought.

Plaintiff didn't ask Defendant to search some incomplete databases, Plaintiff asked defendant to produce decisions.

For the older of the two databases, "BIA eDecisions," which was not searched, Defendant says "The copies of BIA unpublished decisions within BIA eDecisions are not subject to optical character recognition (OCR) cannot be searched using key words or

11

terms." Declaration of Shelley M. O'Hara at ¶14.

This leads to the obvious conclusion that the BIA decisions in this database are not in the native electronic format, and therefore are unsuitable for searching. And indeed, Defendant did not search this database.

For the newer of the two databases "BIA Decisions Portal," the decisions "are subject to OCR and can be searched using key words or terms."*Id* at ¶15.

Taking Defendant's affiant at her word, the decisions in BIA Decisions are not native electronic documents either. They are "subject to OCR" because they are scanned copies of paper decisions, they are not native digital documents. This is plainly inadequate because it shows that this is not the true collection or repository of original BIA decisions, it is some kind of ersatz derivative collection.

In briefing, Defendant argues that its affiant "conducted its search of databases that were reasonably likely to contain responsive materials," but this claim of counsel's is drawn from whole cloth. Defendant's affiant makes no claim as to "reasonable likelihood" of the two searched databases containing the desired material.

Further, Defendant's FOIA appellate authority concedes that Defendant's databases are inadequate. On Dec. 17, 2020, Plaintiff spoke to Daniel Castellano, the Acting Associate Chief of the Administrative Appeals Staff of DOJ's Office of Information Policy (OIP), who supervised the administrative appeal. Mr. Castellano stated that "Sometimes there are agency records system that are not perfect and databases are not — things are inputted imperfectly sometimes." *See* Hawkinson Declaration at ¶21.

Furthermore, this conclusion is buttressed by an examination of the two BIA decisions produced in response to this FOIA request by Defendant, attached hereto as Exhibit 1B.

They are not native digital documents. They are raster image documents at low res-

olution: 150 dots per inch ("dpi")[3]. Despite the database claiming documents "subject to OCR," the produced decisions are not in fact OCR'd[4]. The documents also show the classic cross-modulation distortion of having been printed and then scanned, perhaps through multiple cycles: letterforms are not sharp, thin lines are thicker than they ought to be, and, e.g., a letter e in one position of the page appears differently distorted than the same letter elsewhere on the page.

But significantly, all five pages show staple marks in the upper-left corner, indicating they were printed, stapled, unstapled, and scanned, and perhaps even photocopied along the way. Indeed, The first decision has three sets of staple marks on all of its 3 pages, and the second decision has one set of staple marks on both of its two pages.

So what?

OCR is notoriously unreliable, and OCR of non-native scanned documents especially so. Indeed, Defendant concedes as much, *Id* at ¶¶21, 22. *See also* Hoppock Declaration at ¶7.

If Defendant did keyword searches in a database of OCR'd documents, then Defendant's search was *per se* inadequate.

In addition, the number of BIA decisions Plaintiff sought to search, when limited by date and location but not keyword, was not so large that Defendant could not have simply read them all *by hand* looking for the phrase in question. Plaintiff is skeptical that this would be the most expedient measure.

Defendant alludes to burden, citing *Nation Magazine v. United States Customs Serv.*, 71

---

[3] More accurately, they are 150 dpi horizontally but 149.892 dpi vertically, and the page size is 8.42 x 11 inches, for unknown reasons.
[4] However, this may be an artifact of Defendant's redaction process, as the A-number and case caption were digitally redacted from the document. When bush-league redaction is performed, it can sometimes remove OCR information from documents, as well as reduce resolution and introduce other problems. If that occurred here, it is not OK.

F.3d 885, 890 (D.C. Cir. 1995), where "appellants have asked Customs to search through 23 years of unindexed files." But here, Plaintiff seeks a search of less than a year of fully computerized and fully indexed files. This is night and day.

Furthermore, in *Nation Magazine*, the Government claimed the search would be burdensome. But Defendant cries no such tears here. And when we're talking about electronic searches of recent files, "burden," if you can call it that, is measured in seconds, not days or weeks.

Most remarkable is Defendant's response that it searched two databases of BIA decisions. Defendant provides no explanation for how those databases are created and maintained, or how comprehensive they are.

The First Circuit has said that "In order to establish the adequacy of its search, the agency may rely upon affidavits provided they are relatively detailed and nonconclusory, and are submitted by responsible agency officials in good faith. *E.g.*, *Miller v. United States Dept. of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) *Weisberg v. United States Dept. of Justice*, 705 F.2d 1344, 1485 (D.C. Cir. 1983)" *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993)

Although Defendant's affidavit is detailed, they are not the *right* details. And it is conclusory. It presumes the searched databases are complete and does not attempt to explain or justify such.

"The affidavit should additionally 'describe at least generally the structure of the agency's file system which makes further search difficult.' *Church of Scientology of Cal. v. I.R.S.*, 792 F.2d 146, 151 (D.C. Cir. 1986) (Scalia, J.)" *Maynard*, 986 F.2d at 559.

Defendant does not attempt to discuss the structure of its file system at all, much less the structure of its databases and how they relate to that file system.

Sessions of this court have also acknowledged the D.C. Circuit's direction: "[A]gency

14

affidavits that 'do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the FOIA requester] to challenge the procedures utilized' are insufficient to support summary judgment (quoting *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 371 (D.C. Cir. 1980))." *Moradi v. Morgan*, 2021 U.S. Dist. LEXIS 54896 (D. Mass, March 22, 2021).

Defendant's affiant alleges neither personal nor institutional knowledge over how information gets into those databases.

Defendant's affiant explains in detail how she gets information out of those databases, but so what? It's apparent Defendant searched one of its databases and the decision was missing. But why?

Defendant likens this case to *Stalcup v. CIA*, 768 F.3d 65 (1st Cir. 2014), where the FBI mentioned a photograph in a press release and the plaintiff litigated over its lack of production by the CIA under FOIA. This is inapposite — unlike in *Stalcup*, we have the missing decision in-hand (Exhibit 1A) and its authenticity cannot be reasonably questioned (nor has it been).

Unlike in *Stalcup*, there is no affiant who "cogently explained why[...] a lone department, the directorate of intelligence, would house the responsive records." *Id.* at 74.

Unlike in *Stalcup*, we are not chasing an errant photograph lacking clear provenance or identification or indexing. The missing document is clearly identified by name, A-number, and date. Facts which are (more than) sufficient to identify any BIA decision.

Unlike in *Stalcup*, the missing decision is not a needle in the haystack. It's from less than a year ago.

Defendant appears to misunderstand the nature of the precedents he cites. They all offer exceptions for why a missing document does not prove a search was inadequate. All

these cases work to distinguish why their particular missing document was an outlier.

The backdrop here is that of course missing documents are indicative of flawed searches. Sometimes there's a good reason for why a document is missing, and the search was fine.

For instance, Defendant cites to *Campbell v. SSA*, 446 Fed. Appx. 477, 481 (3rd Cir. 2011), where a missing "Form 831, a Psychiatric Review Technique Form" and "other items Campbell believes should have been in an old file, does not establish, for purposes of defeating a summary judgment motion, that the SSA's search was not reasonable or that any documents were improperly withheld." Old files have holes, and documents get lost. But Defendant does not here even attempt to say this document was lost, or even to declare that it is in fact missing.

It needs far more to rebut what Plaintiff has shown.

## C.   Inadequacy of followup

When confronted regarding the missing document the day after Defendant made initial production, it should have researched the situation and determined why the document was omitted and provided an explanation. Defendant chose not to do so.

Plaintiff filed an administrative appeal. This was the chance for Defendant and Defendant's administrative appellate authority to make this right. But they did not do so. And indeed, OIP's attempt to research the problem was to refer the query to EOIR, from which it "wasn't able to get any further information." Hawkinson Declaration at ¶26.

OIP's administrative appellate review is notably absent from Defendant's summary judgment motion practice. Instead of explaining the steps Defendant took to try to resolve the issues on administrative appeal, it sat silent.

Administrative appeal is not some kind of meaningless administrative checkbox for its own sake along the way to FOIA litigation. It's the agency's opportunity to solve the problem short of litigation, conserving resources for the requester and the agency both.

It's striking that Defendant makes no attempt to locate the missing record in either or both of its two databases, to determine whether it is was mis-coded (e.g. entered under the wrong city or the wrong year, etc.), or missing entirely, or what. Or perhaps most likely: not returned because of inadequate optical character recognition (OCR). Or perhaps Defendant's keyword searching is unreliable in some other way.

With one document missing and two documents found, plaintiff has no way to know if this 33% error is a single missing document, or hundreds of missing documents. Defendant really ought to know, but seems not to care.

# VII.  Conclusion

Defendant failed to search its data library, and it failed to allege any accuracy basis for the single database that it did search. It also failed to explain the omission of the missing document from its meager search results.

This Court should order Defendant to search its data library and also to investigate and provide a reasonable explanation for its search failures. Defendant's renewed search should include not only the original Oct. 2020 request for "alternatives to detention" and "alternatives-to-detention," but also Plaintiff's Dec. 2020 request for "alternative conditions."

## REQUEST FOR ORAL ARGUMENT

Plaintiff requests oral argument on the pending motion and cross-motion.

Respectfully submitted,

**PLAINTIFF**,
**JOHN A. HAWKINSON**, *pro se*

*/s/ John A. Hawkinson*
John A. Hawkinson
Box 397103
Cambridge, MA 02139-7103
617-797-0250
Dated: April 9, 2021   *jhawk@alum.MIT.EDU*