UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN A. HAWKINSON,
　　　Plaintiff,

　　　v.                                          CIVIL ACTION NO. 20-12273-MPK[1]

EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,
　　　Defendant.

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#23)
AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (#25).

KELLEY, U.S.M.J.

　　　I.　　　Introduction.

　　　On December 23, 2020, plaintiff John A. Hawkinson filed a complaint against defendant

Executive Office of Immigration Review (EOIR), a division of the Department of Justice, alleging

violation of the Freedom of Information Act (FOIA), 5 U.S.C. § 552. In his complaint, plaintiff

identifies himself as a freelance reporter who submitted a FOIA request to EOIR seeking "all

Board of Immigration Appeals ('BIA') decisions that date: from December 1, 2019 though

'present'; and originate from Boston, MA or Hartford, CT immigration courts; and contain the text

---

[1] With the parties' consent, this case was reassigned to the undersigned for all purposes, including
trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#20.)

'alternatives to detention' or 'alternatives-to-detention.'" (#1 ¶ 3 (footnote omitted[2]).) Although Hawkinson claims to be aware of three decisions that would fall within the terms of his request, on November 16, 2020, EOIR produced only two decisions. *Id.* ¶¶ 4-5. In response to plaintiff's administrative appeal, on December 15, 2020, the DOJ's Office of Information Policy (OIP) concluded "that EOIR's response was correct and that it conducted an adequate, reasonable search for responsive records subject to the FOIA." *Id.* ¶ 7.

Hawkinson contends that EOIR failed to make reasonable efforts to search for the records he had requested. By way of relief, *inter alia*, plaintiff asks to have the documents sought by his FOIA request declared public and EOIR ordered to produce them. Defendant has filed a motion for summary judgment (#23) and plaintiff a cross-motion for summary judgment (#25), both of which have been fully briefed. (##24, 25, 27, 28, 31, 32.)

II.      Summary Judgment Motions.

"FOIA cases are typically decided on motions for summary judgment." *Am. C.L. Union of Mass., Inc. v. U.S. Immigr. & Customs Enf't*, 448 F. Supp.3d 27, 35-36 (D. Mass. 2020) (citations and internal quotation marks omitted). The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003).  A genuine issue of fact exists where a fact finder could find in favor of the non-moving party, "while material facts are those whose existence or nonexistence has the potential to change the outcome of the suit." *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (internal citation and quotations marks omitted). When addressing cross-

---

[2] Although the exact text is omitted, the footnote explains that EOIR searched for decisions dated from December 1, 2019 through November 16, 2020.

motions for summary judgment, the court "view[s] each motion separately and draw[s] all reasonable inferences in favor of the respective non-moving party.'" *Dahua Tech. USA Inc. v. Feng Zhang*, 988 F.3d 531, 537 (1st Cir. 2021) (*quoting Roman Cath. Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013)).

To summarize, in the FOIA context,

[s]ummary judgment is warranted to an agency . . . when the agency proves that it has fully discharged its obligations under the FOIA after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester. An agency discharges its burden when it proves that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the FOIA's inspection requirements. Summary judgment in FOIA cases may be granted solely on the basis of agency affidavits.

*Mullane v. U.S. Dep't of Just.*, No. 19-cv-12379-DJC, 2021 U.S. Dist. LEXIS 53255, at *2-3 (D. Mass. Mar. 19, 2021) (internal citations and quotation marks omitted); *see Am. C.L. Union of Mass., Inc.*, 448 F. Supp.3d at 42–43.

III.     <u>Background</u>.

In support of its motion for summary judgment, EOIR had filed the declaration (#24-1) and the supplemental declaration (#27-1) of Shelley M. O'Hara, currently "the Attorney Advisor (FOIA) Program Manager with the Office of the General Counsel ('OGC')" at EOIR. (#24-1 ¶ 1.)[3] As the Program Manager, O'Hara manages the FOIA Unit which executes EOIR's FOIA Program under FOIA and the Privacy Act, 5 U.S.C. § 552a. *Id.* ¶¶ 1-2. Her responsibilities include "creating and implementing policy and procedures for the EOIR FOIA Program, conducting FOIA training for EOIR personnel, and processing complex FOIA requests." *Id.* ¶ 3. O'Hara is familiar with

---

[3]O'Hara has been working in the FOIA realm since 2014. *Id.*

EOIR's procedures in responding to FOIA requests in general, and with the October 20, 2020, FOIA request made by Hawkinson in particular. *Id.*

In her declaration, O'Hara describes in detail the process pursuant to which the EOIR FOIA Program operates. (#24-1 ¶¶ 4-16.) A FOIA request follows one of two tracks in the EOIR, a "Simple" or Track 2 request, or a "Complex" or Track 3 request.[4] *Id.* ¶ 4. Simple requests, which are generally first- or third-party requests seeking a particular alien's Record of Proceeding (ROP), are processed at the FOIA Service Center, which manages FOIA intake.[5] *Id.* Complex requests, on the other hand, "are generally requests seeking agency records other than ROPs and generally require collection of records from one or more program offices (including field offices), involve a search for numerous records necessitating a wide-ranging search, and/or involve processing voluminous records." *Id.* Complex requests are forwarded to O'Hara as Program Manager to be processed or delegated; they stay with the OGC until closed. *Id.* ¶ 6.

Plaintiff's FOIA request, ID 166871, reads, in pertinent part, as follows: "Please produce all Board of Immigration Appeals (BIA) decisions that: date from December 1, 2019 through present; and originate from the Boston, MA or Hartford, CT immigraton [sic] courts; and contain the text 'alternatives to detention' or 'alternatives-to-detention.'" (#24-2.) Receipt of the request was acknowledged on October 30, 2020; the request was assigned Control No. FOIA 2021-02706; the request was designated Complex; and the request was assigned to O'Hara. (#24-1 ¶ 18; #24-3.)

---

[4] A Track 1 or Expedited Request is either a Simple or Complex request that moves to the head of the line, bypassing the first-in, first out process. (#24-1 ¶ 4 & n.1.)

[5] The determination of whether a request is designated as either Simple or Complex is made upon intake. (#24-1 ¶ 6.)

There are two types of FOIA requests for BIA Decisions: untargeted requests and targeted requests. (#24-1 ¶ 16.) Targeted requests seek BIA Decisions based on an alien's name or registration number; these requests are not processed by the FOIA Unit due to invasion of privacy concerns.[6] *Id.* Untargeted requests do not include personally identifiable information, but rather seek "BIA Decisions based on a particular immigration judge, a particular immigration court, a date range, and/or key term." *Id.* Such untargeted requests are processed by the FOIA Unit since the BIA databases can be searched and any personally identifiable information redacted. *Id.*

O'Hara has direct access to two BIA internal agency databases that contain copies of BIA unpublished and published decisions on appeal from an immigration judge's decisions (BIA decisions) at the lower immigration court. (#24-1 ¶ 13.) One of the databases, BIA eDecisions, contains BIA unpublished decisions from 2001 to the present. *Id.* ¶ 14. BIA eDecisions cannot be searched using key words or terms because copies of the BIA unpublished decisions in the database are not subject to optical character recognition (OCR). *Id.* Rather, "[s]earch capabilities are limited to the following: Date Range, A-Number (alien registration number), Fine Number, Appeal Type, IJ Name (Immigration Judge Name), and Base City (Immigration Court location)." *Id.*

The second BIA internal database which O'Hara can access directly is called BIA Decisions Portal. (#24-1 ¶ 15.) This database contains copies of BIA unpublished decisions from 2016 to the present, and, because those unpublished decisions are subject to OCR, they can be searched using key words or terms, and the "search results can be filtered by BIA Decision Date, Appeal Type, Filed By, Circuit Court, Base City, Immigration Judge, BIA Decision Code, Board Member [and] BIA Attorney/Paralegal." *Id.*

---

[6] An exception would be if the requester submits a proper verification of identity. (#24-1 ¶ 16.)

O'Hara conducted a search in the BIA Decisions Portal database regarding Hawkinson's FOIA request, inputting the key term "alternatives to detention" limited to the period from December 1, 2019, to November 16, 2020, the date the search was undertaken. (#24-1 ¶ 19.) Of the 85 hits that resulted, two were from the Boston Immigration Court and none were from the Hartford Immigration Court. *Id*. In a second search, O'Hara inputted the key term "alternatives-to-detention" for the period from December 1, 2019, through November 16, 2020. *Id*. The single hit was from the Ninth Circuit, and so was not relevant to the FOIA request. *Id*.; #24-4.

The same day she conducted the searches, O'Hara issued a response to plaintiff's FOIA request, granting partial access to the two BIA Decisions from the Boston Immigration Court.[7] (#24-5.) Hawkinson emailed back the same day, stating that the response appeared to be incomplete and indicating that he had expected to receive a specific named case. *Id*. Because plaintiff's email essentially was a targeted request, and Hawkinson did not provide proper verification of identity for the alien identified, a further search for the specific case was not undertaken. (#24-1 ¶ 20.) Plaintiff was advised that if he did not agree with the response, he could follow the appeal procedures outlined in the email. (#24-5.)

IV.    Discussion.

Hawkinson contends that EOIR's search was "plainly inadequate" because it resulted in the production of two documents but did not include a BIA decision he already had in his possession. (#1; #25 at 1.) In addition, he argues that EOIR failed to explain why the searches conducted did not produce the missing document and should have searched its internal shared drive for responsive documents. (#25 at 1, 10-11, 17.) Defendant's position is that its search was adequate under First Circuit precedent, despite the missing document. (#24 at 14.)

---

[7] Portions of the decisions were redacted in accordance with a FOIA Exemption. (#24-5.)

A.   Legal Standard for Sufficiency of FOIA Responses.

In the context of summary judgment in a FOIA suit, "the burden rests with the agency subject to a FOIA request to establish that it has 'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Oleskey ex rel. Boumediene v. U.S. Dep't of Def.*, 658 F. Supp.2d 288, 294 (D. Mass. 2009) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The agency can make "[t]his showing . . . by affidavits, 'provided they are relatively detailed and nonconclusory, and are submitted by responsible agency officials in good faith.'" *Stalcup v. Dep't of Def.*, No. 13-11967-LTS, 2015 U.S. Dist. LEXIS 125097, at *9 (D. Mass. Sept. 18, 2015) (quoting *Maynard v. C.I.A.*, 986 F.2d 547, 559 (1st Cir. 1993)).

"A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted. . . . [and] should . . . 'describe at least generally the structure of the agency's file system which makes further search difficult.'" *Maynard*, 986 F.2d at 559-560 (quoting *Church of Scientology of Cal. v. I.R.S.*, 792 F.2d 146, 151 (D.C. Cir. 1986)). In addition, an affidavit may include details "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Oleskey*, 658 F. Supp.2d at 294 (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313-314 (D.C. Cir. 2003)). If the agency is able to make a sufficient showing, then "a rebuttable presumption that the agency acted in good faith emerges." *Stalcup v. C.I.A.*, 768 F.3d 65, 74 (1st Cir. 2014). "A requester can rebut that presumption and avoid summary judgment only 'by showing that the agency's search was not made in good faith.'" *Am. C.L. Union of Mass., Inc.*, 448 F. Supp.3d at 42–43 (quoting *Maynard*, 986 F.2d at 560).

This inquiry concentrates on the search itself, not the results of the search. *Oleskey*, 658 F. Supp.2d at 298; *see Hornbostel v. U.S. Dep't of the Interior*, 305 F. Supp.2d 21, 28 (D.D.C. 2003) (stating that "the focus of the adequacy inquiry is not on the results"). "Even if a plaintiff is correct that additional responsive records exist, an agency's failure to locate them 'does not *ipso facto* render its search inadequate.'" *Mullane*, 2021 U.S. Dist. LEXIS 53255, at *7 (quoting *Oleskey*, 658 F. Supp.2d at 298).

B.      <u>The Sufficiency of EOIR's Response</u>.

Having reviewed O'Hara's affidavits (discussed in detail, *supra*) and in light of the relevant legal standard, the court finds that O'Hara's "declaration[s] provided a reasonable explanation for the agency's process," creating a presumption that EOIR acted in good faith.  *Stalcup*, 768 F.3d at 74.

Plaintiff attempts to rebut this presumption in several ways. First, he argues that defendant failed to search the so-called "data library," which he states contains native electronic versions of decisions that are purportedly searchable without the errors often introduced by OCR. (#25 at 10-11.) As Hawkinson acknowledges, however, "he has no direct knowledge of Defendant's filing systems and databases." (#32 at 6.) Defendant notes that the data library Hawkinson references is an internal agency shared drive containing draft versions of BIA decisions. (#27 at 7; #27-1 ¶¶ 2, 4.) O'Hara explains in her supplemental declaration that the data library contains only draft decisions, not final agency decisions. (#27-1 ¶¶ 2, 4.) Official BIA decisions, unpublished and published, are signed by at least one BIA Appellate Immigration Judge. *Id.* ¶ 6. "The originally signed BIA Decision is the official BIA Decision with respect to the particular Respondent's

appeal and is stored in the hard-copy Record of Proceedings." *Id.*[8] Given the non-final status of the materials plaintiff seeks, he fails to show that defendant acted in bad faith by not searching within the data library for materials responsive to his request.

Next, Hawkinson argues that the two databases available to conduct the searches he requested are problematic because of the way documents are scanned and OCR is performed. (#25 at 11-14.) Even if defendant's scanning system and the OCR technology in general may be error-prone, "FOIA contains no requirement that the government maintain its files in a particular way so as to facilitate such a search." *Oleskey*, 658 F. Supp.2d at 297. In addition, "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured." *Id.* at 298 (quoting *Judicial Watch v. Rossotti*, 285 F. Supp.2d 17, 26 (D.D.C. 2003)).

Finally, Hawkinson takes issue with defendant's perceived inability to explain why the missing document was not identified through the searches defendant performed when the document was clearly responsive. (#25 at 17.) As O'Hara noted in her affidavit, EOIR has a policy of not responding to document requests about particular individuals absent a requestor providing verification of identity for that individual. (#24-1 ¶¶ 9, 16, 20.) This same verification is required for targeted searches, which is in essence what Hawkinson was asking EOIR to perform in order to locate the missing document and explain its omission. (#24-5 at 2 (copy of email correspondence between Hawkinson and O'Hara, in which he asked about a decision concerning a named individual).) In any case, the First Circuit has determined that, "[c]ritically, . . . in assessing the adequacy of a search, '[t]he crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents.'"

---

[8] Hawkinson insists that draft decisions can be deemed final even without a signature, but this is his opinion rather than EOIR policy.

*Am. C.L. Union of Massachusetts, Inc.*, 448 F. Supp. 3d at 42–43 (quoting *Maynard*, 986 F.2d at 559); *see Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (stating that an agency's "failure to turn up [a] document does not alone render the search inadequate; there is no requirement that an agency produce *all* responsive documents").

Ultimately, "[t]he omission of a single document in this case does not negate what [was] otherwise a reasonable inquiry." *Stalcup*, 768 F.3d at 75. Hawkinson has failed to rebut the presumption that defendant's search was reasonable and made in good faith. *See id.* at 74.

V.      <u>Conclusion and Order</u>.

For the reasons stated, Defendant's Motion for Summary Judgment (#23) is GRANTED and Plaintiff's Cross-Motion for Summary Judgment (#25) is DENIED. Judgment shall enter for EOIR.


September 27, 2021                                  <u>/s/ M. PAGE KELLEY</u>
                                                   M. Page Kelley
                                                   Chief United States Magistrate Judge

10